
RECEIVED
JUL 8 - 2024
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

Robert James Farrell
Fed. Reg. No. 08060-510
Federal Medical Center Lexington
PO Box 14500
Lexington, KY 40512

Defendant Pro Se

# IN THE UNITED STATES OF AMERICA
# FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> ROBERT J. FARRELL, ) <br> ) <br> Defendant. ) | Case No. 4:22-CR-00085-001 <br><br> **DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE** |

## INTRODUCTION

COMES NOW, the Defendant, Robert Farrell, Pro Se, in his reply to the Government's response brief. As a matter of housekeeping, the Court previously ordered a due date of July 5th, 2024. However, after contacting the Court's clerk, it was learned that the Court was blacked out July 5th. The Defendant therefore asks the Court to consider this motion timely.

Mr. Farrell does not wish to relitigate issues already addressed in his instant motion. He does however wish to address specific issues the Government raised (or failed to raise/ acknowledge) in its response.

## ARGUMENT

**Dr. Verma's Letter to the Court**

The heart of Mr. Farrell's compassionate release lies in the declaration/assessment/review presented to the Court by Dr. Verma. As a matter of elementary authentication, the Government seems to call into question Dr. Verma's letter because there was no date attached. The letter from Dr. Verma was received via the "patient portal" by Mr. Farrell's girlfriend, Krista Clark, on April 30, 2024. A screen shot is attached for the Court's review, showing the date and time of the letter.

The Government asserts that Dr. Verma's letter provided no evidentiary support. This is categorically untrue. In fact, should the Court review the letter and exhibits presented, it will find that Dr. Verma specifically references Mr. Farrell's medical records when stating, "[I] have reviewed the medical records and letter and would like you to consider what I have to say." These are the same records that the Government used in basing its own "non-medical" opinion of Mr. Farrell's condition. Furthermore, Dr. Verma's entire declaration to the Court is based off Mr. Farrell's clinical records alone--nothing else. She has not interviewed prison medical staff or Mr. Farrell.

**Universal Standards of Care for UC Patients Ignored**

Dr. Verma was abundantly clear in her declaration that the care Mr. Farrell has been receiving at the prison "is not the standard of care that a patient with ulcerative colitis should receive." This is in stark contrast to the Government's assertion that, "the BOP is fully aware of defendant's condition and is providing appropriate care for Defendant." How the Government draws this conclusion is difficult to reconcile. Dr. Verma describes in detail the standard of care and medication regimen Mr. Farrell should have received--and has not.

**Dr. Verma's Declaration Does, In Fact, Mention Steroids**

It is clear that the Government has not read Dr. Verma's letter thoroughly. Dr. Verma not only mentions Mr. Farrell's steroid treatment regimen, but the inappropriate dosing and taper schedule that should have been followed—that was not. Again, this is in stark contrast to the standards of care that should have been followed and employed.

Dr. Verma acknowledges the steroid treatment prescribed and given to Mr. Farrell as "not appropriate." She further states, "Patient being started on Humira was not the right medication for him to be put on." Most disturbing and worrisome is Dr. Verma's closing comment where she states, "the constant use of steroids on and off, Humira and Azathioprine are causing him to be immunosuppressed along with unsanitary conditions of being in a crowed confinement."

**Mr. Farrell Does Meet Extraordinary and Compelling Circumstances**

Mr. Farrell does in fact meet the high bar for "Extraordinary and Compelling" circumstances as prescribed in 18 USC 3582(c)(1)(A)(i). The Government cites the aforementioned statute and USSG 1B1.13, comment (n.1), attempting to limit the definition of "Extraordinary and Compelling" circumstances. The Government, however, missed the now expanded definition by the USSG, which Mr. Farrell cites in his original motion. A Defendant no longer needs to have "an end-of-life trajectory" to qualify as "Extraordinary and Compelling." Mr. Farrell clearly relies on the expanded notes by the USSG that give clear direction to inmates "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." This directive is clearly targeted for inmates such as Mr. Farrell. In fact, Dr. Verma is clear in her declaration to the Court that "if he continues to be in a state of flare and we are not

able to get him back into remission, he may need emergent surgical intervention for a toxic mega colon. The longer he is not in remission puts him at great risk of infection and hospitalization." The Government should have been able to draw its own conclusion from this statement--Mr. Farrell meets the definition for "Extraordinary and Compelling" circumstances under the statute.

**Mr. Farrell has a Diminished Capacity to Provide Self-Care in His Current Setting**

In Mr. Farrell's continuing decline in health, his ability to provide self-care decreases daily. This is compounded by the prison's inability to make accommodations for his disease. He is still forced to buy 10 plus rolls of toilet paper off the "black market" weekly, live on a top bunk, and spend many nights sleeping on the toilet--all of this after repeated requests to medial staff for accommodations.

Because he is in a constant state of "flare", he is unable to provide a "sample" to test his levels of Calprotectin. Mr. Farrell has asked repeatedly for an alternative method to test--medical staff knows of no other ways. He furthermore was told by nurse Gil that if he was unable to provide another sample, his appointment with the University of Kentucky GI clinic would be cancelled--this is inapposite of each other.

Again, Dr. Verma's declaration is clear, "the longer he is not in remission puts him at great risk for infection and hospitalization."

**Lab Results**

Simply put, the same lab results that Dr. Verma relied upon to make her recommendation-- the Government has in its own possession for their review--but fails to mention them at all in their brief. Mr. Farrell previously provided those results to the Court for

its review. The results clearly show the exploding numbers that translate to the severity level of his diseases' trajectory.

**Dr. Verma's Declaration vs Government's Non-Medical Opinion**

The Government provides the Court with no medical based professional opinion discounting Dr. Verma's declaration and assessment of Mr. Farrell's condition. There are no expert opinions or analysis that would otherwise disprove Dr. Verma's interpretation and assessment of Mr. Farrell's records. The Court should therefore conclude that an order of time served and a period of home confinement is the only viable alternative for Mr. Farrell to finish the remaining months of his sentence.

**CONCLUSION**

Mr. Farrell meets the high bar for extraordinary and compelling circumstances. His ability to provide self-care continues to diminish. This Court and the Government relied heavily on Dr. Verma's recommendation before and after sentencing. Mr. Farrell asks the Court to do the same again with this new declaration from Dr. Verma as to Mr. Farrell's state.

Dr. Verma finished her declaration by telling the Court, "Robert is not receiving proper treatment while incarcerated. I highly recommend that he is moved to home confinement as soon as possible so he can receive proper treatment, with timely follow-up with my office. I am afraid that if he is not moved soon, he will become severely ill and end up hospitalized with potential to have surgery that could have been prevented if he had proper treatment and proper recommendations while being incarcerated."

Mr. Farrell renews his motion to the Court for an **ORDER** reducing his sentence to time served with a period of home confinement to follow so he can seek the treatment and care he needs with Dr. Verma.

Respectfully submitted this 5th day of July, 2024.

/s/       Robert James Farrell

**Robert James Farrell**
**Fed. Reg. No. 08060-510**
**Federal Medical Center Lexington**
**PO Box 14500**
**Lexington, KY 40512**



From: Sarah Lanpher 04/30/2024 11:14 AM
Subject: Letter to Judge Rose
Location: IDDC Clive Office
Type: Clinical

I have posted to the portal a letter to Judge Rose from Dr Verma.

Please let me know if you have any questions.

Sarah RN-BSN